STATE v. JOE ASHLEY.

(Filed 1 March, 1950.)

**1. Automobiles § 28e—**

Evidence tending to show that defendant, after he had been followed to a house by officers and while the officers were assembled in front of the house in the driveway leading to the road, drove a car from behind the house into the driveway from one side of the driveway to the other and out into the road, *is held* insufficient to be submitted to the jury on a charge of assault with a deadly weapon, since the evidence affords a basis for the reasonable inference that defendant was seeking to avoid the officers and to escape rather than intentionally to injure them.

**2. Automobiles § 28d—**

Testimony of officers that defendant, in driving his car from a house along a driveway to the highway, attempted to strike the officers assembled in front of the driveway, *is held* a statement of conclusion rather than an evidential fact.

Appeal by defendant from *Clement, J.,* November Term, 1949, of Caswell. Reversed.

The defendant was indicted in three cases for assault with deadly weapon, to wit, an automobile, upon three several persons, on the same occasion. There was verdict of guilty in each case, and from judgment imposing sentence, the defendant appealed.

*Attorney-General McMullan and Assistant Attorney-General Moody for the State.*

*P. W. Glidewell, Sr., for defendant.*

Devin, J.   The only error assigned by defendant in his appeal to this Court is the denial of his motion for judgment of nonsuit.

It appears from the record that at the trial the State offered evidence tending to show that on the night of 14 December, 1948, the sheriff accompanied by two deputies and a highway patrolman went to a tobacco barn near where a still had been seized and found seventy gallons of nontax-paid whiskey. A man named Fuller was arrested there. After the officers had waited at the barn an hour two men approached, and, hearing no response to their inquiry, ran. The officers pursued them some distance through the woods and finally saw them disappear behind a house. The officers then assembled in front of the house in the driveway leading to the road, with their flashlights burning, and shortly thereafter heard a car start. The car came out from behind the house into the driveway "going from one side to the other of the driveway," and on out to the road. The car was "weaving from side to side" as one witness

expressed it. No word was spoken by the officers or the driver, but the officers shot down a tire of the car, and then tracked it down the road and found it in another yard. Next day the defendant claimed the car, admitting he was driving it at the time but stating he had nothing to do with the still or liquor, that he had heard he could buy liquor at the barn and had gone there for that purpose. There was no evidence that the defendant had anything to do with the manufacture or possession of the whiskey found, and the case against him on that ground was properly dismissed by the trial judge.

From this resume of the pertinent testimony in the case, it is apparent that, though there was some ground for suspicion of guilty knowledge of illicit liquor operations on the part of the defendant, the evidence was not of that definite and substantial character required to convict him of an assault with a deadly weapon upon either of the officers. No one of them was touched by defendant's automobile, nor was there evidence of a purposeful menace of violence by that means. The presence in the darkness of four men, identity undisclosed to the defendant, in the narrow driveway leading from the house to the road along which defendant was attempting to travel, affords basis for the reasonable inference that the manner in which he drove was due to his seeking to avoid them and to escape, rather than intentionally to injure them. *S. v. Daniel,* 136 N.C. 571, 48 S.E. 544. True, several of the officers testified "the car tried to strike us," but we think that the statement of a conclusion rather than an evidential fact.

From an examination of the evidence offered at the trial as set out in the record, we conclude that the defendant's motion for judgment as of nonsuit should have been allowed, and that the judgment must be

Reversed.